FILED
2022 Mar-14  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES E. HENDERSON II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 2:20-cv-00794-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Charles E. Henderson, *pro se*, filed a complaint appearing to seek judicial review of the denial of his claim for benefits under Titles II and XVI of the Social Security Act.  Henderson alleges neither the Administrative Law Judge ("ALJ") nor the Appeals Council addressed the grounds for why he was seeking benefits.  (Doc. 1 at 1).  Specifically, Henderson states "[t]hose grounds [we]re based on [the] AMERICANS WITH DISABILITIES ACT TITLE VII" and that the Commissioner needed to address the actions of his former employer, the Birmingham Board of Education.  (*Id.*).  Henderson also states his "complaint" was "due to his employer not adhering to time restraints [to produce] any official documents pertaining to the matter" and that the Commissioner did not address the "Americans with Disabilities Act title VII."  (Doc. 12 at 1; *see also* doc. 18).

To the extent Henderson's complaints against the Commissioner arise under the Americans with Disabilities Act ("ADA"), and not the Social Security Act (the "Act"), this Court lacks subject

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.

matter jurisdiction.  Furthermore, as for review under the Act, because Henderson timely pursued and exhausted his administrative remedies, this case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

On June 16, 2017, Henderson applied for a period of disability, disability insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits, alleging disability beginning on October 18, 2007.  (Tr. 178-81, 182-87).  After the agency initially denied the applications (tr. 70-83, 84-89), Henderson requested a hearing with an ALJ.  (Tr. 113-25).  On March 7, 2019, Henderson appeared, unrepresented, at a scheduled hearing, but after some questioning, the ALJ paused the hearing and rescheduled it so Henderson's medical records could be updated.  (Tr. 53-66).  At the initial hearing, Henderson testified the director of the high schools where he used to teach asked him to leave the classroom where he was teaching in 2005.  (Tr. 63).  Henderson was then placed on administrative leave with pay and eventually had a hearing with the school board in February 2007.  (*Id.*).  Henderson reported he had not worked since October 2007, although he had applied for jobs.  (Tr. 11, 63-64, 202-08).  He told the ALJ he did not know why he was placed on administrative leave and removed from his teaching job.  (*Id.*).

Henderson appeared, unrepresented, at the rescheduled hearing on August 14, 2019, where medical and vocational experts testified.  (Tr. 25-52).  Again, Henderson testified he was unclear why he was placed on administrative leave from his teaching job.  (Tr. 35-37).  On September 18, 2019, the ALJ issued a decision finding Henderson was not disabled under the Act from his alleged onset date of October 18, 2007, through the date of the decision.  (Tr. 9-20).

Henderson sought Appeals Council review of the ALJ's decision, but only alleged harm

caused by the Birmingham Board of Education's actions.  (Tr. 290).  Specifically, Henderson stated there was no official documentation as to why he was placed on administrative leave without pay; the Board did not handle his "matter" in a timely manner; and the Board of Education's actions caused him "financial, mental, as well as career stressful situations." (Tr. 290). On May 22, 2020, the Appeals Council denied Henderson's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). As the Appeals Council indicated in its denial of review, it considered Henderson's letter request for review and a letter from the Birmingham City Schools indicating Henderson had been placed on administrative leave with pay, dated October 24, 2005, which was two years prior to his alleged disability onset date. (Tr. 2, 4-5, 67, 290-91).  The Appeals Council found the evidence did not "show a reasonable probability that it would change the outcome of the ALJ's decision." (Tr. 2).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This Court must uphold factual findings supported by substantial evidence.  "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Jurisdiction to Consider Allegations Related to the Birmingham Board of Education and the ADA

Henderson contends the Commissioner erred when he did not address the grounds for why Henderson was seeking disability, which "we[re] based on [the] AMERICANS WITH DISABILITIES ACT TITLE VII" and the actions of his former employer, the Birmingham Board of Education.  (Doc. 1 at 1, doc. 18).  However, judicial review is limited to a particular type of agency action. *See Califano v. Sanders*, 430 U.S. 99, 108 (1977).  Allegations against Henderson's former employer are outside the scope of the Commissioner's review.

Title 42 U.S.C. § 405(g), which provides the exclusive jurisdictional basis for review under the Act, provides that a claimant may commence a civil action for review of "any final decision of the Commissioner of Social Security made after a hearing . . . ."  Moreover, § 405(h) states, in relevant part: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."

Henderson has not shown that the Commissioner could have adjudicated any claim under

4

the ADA or against his former employer when he was determining whether Henderson was entitled to benefits under the Act.   Those claims do not relate to Henderson's eligibility for disability benefits that arise under the Social Security Act.  42 U.S.C. § 423(d), 1381, 1382, 1383.   To the contrary, Henderson's claims related to the ADA and his former employer do not allege violations of the Act.   As such, they are outside of the jurisdiction of this review.

Because they are outside of the scope of the Commissioner's purview, any claims based on the ADA or actions taken by Henderson's former employer are due to be dismissed.[3]

## IV. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by

---

[3] Even if there was jurisdiction to hear this claim, Henderson would not be entitled to relief based on the ADA or any actions taken by his former employer. Henderson alleges a disability onset date of October 18, 2007.  (Tr. 9).  Any action taken by the Birmingham Board of Education occurred prior to the onset date for disability.  (*See* tr. 67, 290-91) (explaining Henderson was placed on administrative leave in October 2005).  Furthermore, in 2015, Henderson filed a civil rights action in this Court with similar allegations that named Birmingham City Schools as the defendant. *See Henderson v. Birmingham City Schools*, Case No. 2:15-cv-01821-VEH. Determining Henderson could not state a claim upon which relief could be granted, on March 29, 2016, United States District Judge Virginia Emerson Hopkins dismissed the complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(1).

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### V. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Henderson met the insured status requirements of the Social Security Act through December 31, 2012, and that Henderson had not engaged in substantial gainful activity from his alleged onset date of October 18, 2007. (Tr. 11). At Step Two, the ALJ found Henderson has the following severe impairments: diabetes mellitus, neuropathy, and status-post amputation of the toes on the right foot. (Tr. 12-14). At Step Three, the ALJ found Henderson

did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-15).

Before proceeding to Step Four, the ALJ determined Henderson's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Henderson has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except he can stand/walk for a total of three hours and sit for a total of six hours, and can lift ten pounds frequently and twenty pounds occasionally. Henderson cannot operate foot controls with the right lower extremities.  He should never climb ladders, ropes, scaffolds, or stairs.  The claimant must avoid concentrated exposure to extreme heat and humidity, and avoid all excessive vibrations and hazards.  (Tr. 16-18).

At Step Four, the ALJ determined Henderson is unable to perform any past relevant work. (Tr. 18-19).  At Step Five, the ALJ determined, based on Henderson's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Henderson could perform. (Tr. 19-20).  Therefore, the ALJ determined Henderson had not been under a disability and denied his claim.  (Tr. 20).

## VI. Analysis/Review of Commissioner's Decision

Generously construing Henderson's complaint as a general challenge to the Commissioner's decision denying benefits, there is substantial evidence to support the ALJ's findings and there was no error.  Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d

1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted). Here, substantial evidence supports the ALJ's determination Henderson failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

Henderson alleges he is disabled due to a foot injury, "personal and cultural differences," and being "emotionally distraught." (Tr. 213). When he testified at the administrative hearing, Henderson indicated he did not have a mental health problem, but that his issue was "a foot injury." (Tr. 32-33, 45-46). The ALJ found Henderson had the following severe impairments: diabetes mellitus, neuropathy, and status-post amputation of some toes on the right foot. (Tr. 12). The ALJ found Henderson's mental impairments to be non-severe. (*Id.*). The ALJ cited specific evidence to support this determination that Henderson's mental impairment does not cause more than a minimal limitation to his ability to perform the basic mental work activities. (*Id.*). The ALJ cited records addressing Henderson's ability to follow written and oral instructions very well (tr. 12, 231), notes indicating his demeanor was good during sensorium and cognitive testing (tr. 12, 1747-48), notes indicating he had a good fund of knowledge, normal speech, and fair insight and judgment (tr. 12, 1747-48), treatment records indicating Henderson was pleasant and cooperative (tr. 12, 2328, 2822), evidence he was able to care for his parents, son, and other immediate family members (tr. 12, 227), and the fact that, during the hearing, Henderson was polite to the ALJ and other participants (tr. 12-13). The ALJ stated Henderson reported no issues with attention and was good at activities such as reading, research, and cognitive development, suggesting he could stay on task. (Tr. 13, 226, 230-231).

Next, the ALJ assessed Henderson's RFC, finding him able to perform a range of light work, as defined in 20 C.F.R. 404.1567(b), except he can stand/walk for a total of three hours and

sit for a total of six hours, and can lift ten pounds frequently and twenty pounds occasionally. Henderson cannot operate foot controls with the right lower extremities. He should never climb ladders, ropes, scaffolds, or stairs. Henderson must avoid concentrated exposure to extreme heat and humidity, and avoid all excessive vibrations and hazards. (Tr. 16-18). In assessing these functional limitations, the ALJ considered Henderson's subjective allegations, his treatment records showing little functional deficit, the fact Henderson had required little invasive treatment beyond medication for his diabetes, his ability to perform his activities of daily living with little interruption, and the fact Henderson continued to look for jobs, including those that would require physical activity. (Tr. 15-18).

As to Henderson's foot issues, the ALJ acknowledged Henderson had surgery to remove part of his toes on his right foot in March 2014, due to osteomyelitis[5] and ulcers. (Tr. 16, 535, 539, 542-43, 571-55). In 2017, around the time he applied for benefits, Henderson complained of worsening right foot ulcers, and the doctor noted a concern about recurrent osteomyelitis. (Tr. 16, 2028-29). However, the ALJ noted that records showed Henderson was ambulatory and independently performed self-care and activities of daily living. (Tr. 16, 1976, 2131). Henderson demonstrated issues related to his gait and used an off-loading boot. (Tr. 16, 1886, 2186, 2360-61). In April 2018, Henderson was admitted to the hospital for concerns relating to his osteomyelitis. (Tr. 16, 2411-13). Doctors recommended further amputation, but Henderson opted against it, which the ALJ interpreted as suggesting Henderson's foot did not have a disabling effect on his functioning. (Tr. 16, 2411-13).

The ALJ also noted Henderson repeatedly denied being in pain. (Tr. 16). Henderson

---

[5] Osteomyelitis is inflammation of the bone caused by infection. *See mayoclinic.org/diseases-conditions/osteomyelitis/symptoms-causes/syc-20375913.*

testified he mowed the grass, performed household chores, and drove a car, despite his foot injury. (Tr. 16, 43-45, 227-30, 2418).  As to his neuropathy, Henderson reported tingling and numbness, but denied any loss of sensation in his lower extremities.  (Tr. 17, 536, 2100, 2321, 2699, 2724). Some physical examinations documented a loss of sensation in Henderson's feet and an abnormal gait.  (Tr. 17, 538, 632, 1817, 1900, 1951, 2028, 2583).  However, other physical examinations documented intact sensation and an absence of focal deficits.  (Tr. 17, 1866, 1970).  Based on this evidence, and the fact Henderson remained ambulatory and independent in his activities of daily living, the ALJ found Henderson's neuropathy was functionally limiting, but that it did not preclude work activity all together.  (Tr. 17, 1883).

The ALJ properly found Henderson's physical impairments caused work-related limitations, but that Henderson retained the ability to perform a limited range of light work.  (Tr. 15-18).  Based on his history of toe amputation and other symptoms with his feet, the ALJ found Henderson could only stand or walk for a total of three hours in a work day.  (Tr. 18).  The ALJ further limited Henderson, finding he should not operate foot controls with the right lower extremity.  (*Id.*).  The ALJ also found postural and environmental limitations to accommodate Henderson's diabetes and neuropathy.  (*Id.*).

Henderson does not allege any specific error with the ALJ's decision or show he was more limited than the ALJ found, and, as articulated above, there is substantial evidence to support each of the ALJ's findings.

### VII. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Henderson's claim for a period of disability, DIB, and SSI is **AFFIRMED** and this action

**DISMISSED WITH PREJUDICE**.  Any other requests for relief are **DENIED** based on a lack

of jurisdiction.  A separate order will be entered.

      DONE this 14th day of March, 2022.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE